IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

JOE THOMASON, )
)
        Plaintiff, )
)
v. ) No. 14-1121-T
)
COMMISSIONER OF SOCIAL )
SECURITY ADMINISTRATION, )
)
        Defendant. )

---

ORDER AFFIRMING DECISION OF COMMISSIONER

---

      Plaintiff filed this action to obtain judicial review of the Commissioner's final decision denying his applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* The applications were denied initially and upon review. Plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on September 27, 2012. On November 30, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff then filed this action. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

      A Social Security claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. 42 U.S.C. § 405(g). "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, id.; Jones v. Commissioner, 336 F.3d 469, 478 (6th Cir. 2003) (citing Wyatt v. Secretary, 974 F.2d 680, 683 (6th Cir. 1992)), and whether the correct legal standards were applied. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986). The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff filed his applications for disability benefits on September 20, 2011. R. 11, 132-43. He was born on January 2, 1965, and he alleges that he became disabled beginning January 1, 2004. R. 11, 132, 137. He alleges disability due to a ruptured disc. R. 157. He has a ninth grade education.

In the decision, the ALJ enumerated the following findings: (1) Plaintiff met the disability insured status requirements through September 30, 2012; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability; (3) Plaintiff has the following severe impairments: lumbar degenerative disc disease with history of laminectomy, peptic ulcer disease, hypertension, obesity, depression, anxiety, and borderline intellectual functioning; however, the evidence does not establish medical findings which

2

meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) Plaintiff has the residual functional capacity to perform light work; he can lift twenty pounds occasionally and ten pounds frequently; he can sit, stand, and walk for six hours each in an eight-hour workday; he can frequently balance, stoop, kneel, crouch, and climb stairs or ramps; he can occasionally crawl and climb ladders, ropes, and scaffolds; he can perform short, simple directions, make judgments on simple work-related decisions, interact occasionally with the general public, interact appropriately with co-workers and supervisors, and adapt to infrequent workplace changes; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual on his alleged onset date; (7) Plaintiff has a limited education; (8) Transferability of job skills is not an option because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (9) Based on Plaintiff's age, work experience, education, and residual functional capacity, there are a significant number of jobs in the national economy which he can perform; (10) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. Born v. Secretary, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the

Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Willbanks v. Secretary, 847 F.2d 301 (6th Cir. 1988). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fifth step. The ALJ found that Plaintiff can perform a significant number of jobs in the national economy and, therefore, is not disabled.

Plaintiff contends that substantial evidence does not support the ALJ's finding that he does not meet the severity requirements of Listing 12.05(C) (Mental Retardation). Listing 12.05(C) provides:

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function....

In order to meet Listing 12.05(C), a claimant's impairment must satisfy the diagnostic description in the introductory paragraph to 12.05 <u>and</u> the criteria in paragraph C of 12.05. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (Introduction). Thus, Listing 12.05(C) involves three criteria: (1) mental retardation, i.e., significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before the age of twenty-two; (2) a valid verbal, performance or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C. A claimant may meet or equal Listing 12.05(C) only if he meets or equals all three elements. 20 C.F.R. §§ 404.1525-1526; <u>West v. Commissioner</u>, 2007 WL 1991059 (6th Cir.) (A claimant must make three showings to satisfy Listing 12.05(C)). The burden of proof at this level of the sequential evaluation is on the plaintiff. <u>See</u> <u>Zebley v. Sullivan</u>, 493 U.S. 521, 530 (1990).

In the present case, Plaintiff has a valid verbal IQ score of 60 through 70 and a significant work related limitation. Therefore, the issue is whether he meets the requirement of significantly subaverage general intellectual functioning <u>with</u> deficits in adaptive behavior

5

initially manifested during the developmental period (before the age of twenty-two). The ALJ found that he did not meet this requirement. Substantial evidence supports this finding.

In reaching his decision, the ALJ looked at the following evidence. Despite his low IQ score, Plaintiff's skilled and semi-skilled work activities show that he is able to function at a higher level than reflected in formal intelligence testing and does not demonstrate deficits in adaptive functioning. See Cooper v. Commissioner, 217 F. App'x 450, 452 (6th Cir. 2007) (semiskilled work was inconsistent with Listing 12.05); Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2001) (claimant's past work as a clerk demonstrated that she did not have deficits in adaptive functioning). The ALJ may consider a claimant's work history in determining that the claimant does not have "significant subaverage intellectual functioning with deficits in adaptive functioning." See Johnson v. Barnhart, 390 F.3d 1067, 1071 (8th Cir. 2004) ("The record also indicates that Johnson did not display the significant limitations in adaptive functioning that 12.05 requires. In fact, the district court stated in its review that '[Johnson] testified that he would still be working at the time of the hearing had he not been fired[,]' and 'that he was looking for work at the time of the hearing.'") (citation omitted); West v. Commissioner, 2007 WL 1991059 (6th Cir. 2007) ("Prior to the deterioration of his physical health, West held a long-term, full-time position with the City of Wilmore . . . .").

Also lending support to the ALJ's findings is the fact that Plaintiff was diagnosed with borderline intellectual functioning and not mental retardation. R. 18, 334-35. While a diagnosis of mental retardation is not required, its absence is probative. See Cooper v.

6

Commissioner, 217 Fed.Appx. 450, 452 (6th Cir. 2007) (Plaintiff was never diagnosed with mental retardation but was diagnosed with borderline intellectual functioning).

Moreover, there is no medical opinion that Plaintiff had deficits in adaptive functioning. Although David Pickering, Ph.D., suggested that Plaintiff had a sufficient IQ score to meet Listing 12(C) and another impairment, he did not opine that Plaintiff had a deficit in adaptive functioning prior to the age of twenty-two. R. 393. And, the state agency medical consultant who reviewed the medical records, IQ scores, and Plaintiff's school history, R. 378-87, concluded that Plaintiff did not meet or equal a listing-level impairment. R. 373.

Plaintiff attended special education classes; however, there is no evidence of any deficits in adaptive functioning that Plaintiff may have had apart from generally taking part in special education classes. R. 18, 53, 157-58, 161, 332. "This Court has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." Hayes v. Commissioner, 357 Fed.Appx. 672, 676-77 (6th Cir. 2009).

Because Plaintiff has failed to establish the threshold requirement of Listing 12.05(C), i.e., significantly subaverage general intellectual functioning with deficits in adaptive functioning, the ALJ's decision is supported by substantial evidence.

It is the ALJ's responsibility to determine residual functional capacity based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. See Anderson v. Shalala, 51 F.3d 777

(8th Cir. 1995); 20 C.F.R. §§ 404.1546(c), 416.946(c). Here, the ALJ considered all of the evidence in the record and adequately explained the basis for his residual functional capacity finding. As the ALJ's residual functional capacity was within the "zone of choice" supported by substantial evidence, his finding is upheld. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

In assessing Plaintiff's residual functional capacity, the ALJ relied, in part, on the dearth of medical treatment. See Blacha v. Secretary, 927 F.2d 228, 231 (6th Cir. 1990) (a mild treatment history was inconsistent with claims of disabling impairments); Flaten v. Secretary, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ was entitled to draw an inference adverse to the claimant from the lack of medical care). Plaintiff alleged that he became disabled on January 1, 2004, but sought no medical treatment until January 2005 for an unrelated impairment. R. 132, 137, 212. Plaintiff sought no further treatment until August 2006 when he reported a two-day history of chest pain. R. 242. Over a year later, Plaintiff received treatment for a three-day history of chest pain. R. 273. He was not seen by any other medical professional until November 2011 when the Commissioner ordered a consultative examination. R. 315.

Plaintiff received no medication for his allegedly disabling back pain. R. 21, 44, 275. Furthermore, Plaintiff did not comply with the medical instructions to stop smoking and drinking alcohol. See Ranellucci v. Astrue, 2012 WL 4484922, *10 (M.D. Tenn., Sept. 27, 2012) (citing Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001) (noncompliance is a

proper credibility factor)). The ALJ properly found Plaintiff's limited medical treatment and noncompliance with medical instructions inconsistent with his allegations of disability.[1]

The ALJ found Plaintiff's allegations regarding his limitations inconsistent with the record as a whole, including his medical treatment, the medical evidence, and the medical opinions. Of note in determining Plaintiff's credibility is the fact that he lied to a criminal court judge regarding his DUI. R. 19, 23, 391.

Additionally, Plaintiff's allegations were not supported by the medical evidence. While he alleged disabling back pain, he appeared in no acute distress. R. 243, 307, 316, 350, 353. He exhibited normal gait and station, full strength, intact sensation, and no motor or sensory deficits. R. 243, 273, 309, 318-19, 350, 353. X-rays and MRIs revealed mild degenerative disc disease and disc bulge. R. 21, 343, 347, 349, 359-60. Despite Plaintiff's mental impairments, he appeared alert and oriented with normal mood and affect, normal speech, good eye contact, good concentration, intact memory, and logical thought processes. R. 243, 307-08, 332-33, 350, 353, 391.

Plaintiff continued to work part-time for six years after his alleged onset date. R. 38-39, 172, 307, 333. An ALJ may consider an individual's work during a period of time in which he was alleging disability. See Miller v Commissioner, 524 Fed.Appx. 191, 194 (6th Cir. 2013) ("Further, the ALJ did not err by considering Miller's ability to maintain part-time

---

[1] There is no evidence that Plaintiff sought treatment offered to indigents or was denied medical treatment due to an inability to pay.

employment as one factor relevant to the determination of whether he was disabled.") (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971).

The opinion evidence supports the ALJ's residual functional capacity finding. Consultative examiner Steve Weaver, M.D., opined that Plaintiff could lift ten pounds occasionally, sit for more than five hours in an eight-hour workday, and stand/walk for more than five hours in an eight-hour workday.[2] R. 320. Consultative examiner William Sewell, Ph.D., opined that Plaintiff had no limitations in performing simple work. R. 18, 20, 335-36. Stanley King, P.A., opined that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently, sit for six hours in an eight-hour workday, and stand/walk for two hours in an eight-hour workday.[3] R. 405-06. Dr. Pickering opined that Plaintiff had marked or moderate limitations in all work-related activities.[4] R. 410-12. State agency medical consultants reviewed the medical records and opined that Plaintiff could perform a range of simple, light work. R. 323-31, 372-87.

The ALJ incorporated into Plaintiff's residual functional capacity the credible impairments and restrictions and found Plaintiff capable of a range of simple, light work. Substantial evidence supports this decision.

---

[2] The residual functional capacity finding is consistent with Dr. Weaver's opinion that Plaintiff can sit for more than five hours in an eight-hour workday and stand/walk for more than five hours in an eight-hour workday, R. 16, 320, but the ALJ found Dr. Weaver's lifting restriction overly restrictive.

[3] The ALJ found this opinion inconsistent with the mild findings and Plaintiff's limited medical treatment.

[4] The ALJ determined that Dr. Pickering's opinion was inconsistent with Plaintiff's lack of treatment, his admission that he lies, and his ability to perform part-time work. The ALJ gave Dr. Pickering's opinion little weight and gave greater weight to the opinions of Dr. Sewell and the state agency medical consultant.

The burden shifts to the Commissioner at the fifth step to establish the claimant's ability to do other work. See Foster v. Halter, 279 F.3d 348 (6th Cir. 2001) (citations omitted). The ALJ asked the vocational expert about an individual of Plaintiff's age, education, work experience, and residual functional capacity. The vocational expert responded that such an individual could perform work as a housekeeper, a power screwdriver operator, and a bindery machine off-bearer. R. 25-26, 58-59. The vocational expert also testified that, if the same individual was limited to lifting ten pounds occasionally, the individual could perform work as a table worker, a cuff folder, and a plastic design applicator, which jobs existed in significant numbers in the national economy. R. 59-60. As the ALJ's hypothetical question included those limitations supported by the evidence, the vocational expert's opinion as to what jobs Plaintiff could perform constitutes substantial evidence supporting the denial of benefits, and the decision of the Commissioner is AFFIRMED.

The clerk is DIRECTED to enter judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE